UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

ERNEST ALLEN

Plaintiff

    V                                 Civil Action No. 3:15-cv-30052-MGM

LUSTIG GLASER & WILSON P.C

DEREK S. ROGERS

KENNETH WILSON

DEAN A. HEINOLD

LILY HAAS

MIDLAND MANAGEMENT INC.

MIDLAND FUNDING

ENCORE CAPITAL

JOHN DOE 1

## FIRST AMENDED COMPLAINT

## PRELIMINARY STATEMENT

1. This is an action for damages brought from violations of the Fair Credit Reporting Act

   (FCRA) 15 U.S.C. §1681 *et seq.*, Fair Debt Collection Practices Act (FDCPA) 15 U.S.C.

   §1692 et seq, Massachusetts Unfair & Deceptive Trade Practices Act (mgl 93a.)

## JURISDICTION

2. This court has jurisdiction over this matter pursuant to 15U.S.C. §1692, 15U.S.C.§1681p and
   28 U.S.C. §1332.

3. The occurrences which give rise to this action occurred in Massachusetts and Plaintiff resides
   in Massachusetts and the defendants transact business in Massachusetts.

4. Venue is proper in Massachusetts County of Hampden, because defendants intentionally
   reached into the county of Hampden and injured the plaintiff Ernest Allen

5. This Court has jurisdiction over defendants pursuant because defendants caused injury to
   plaintiff within this state (Massachusetts) while it was engaged in service activities, to wit, debt
   collection, within this state.

## Parties

6. The Plaintiff Ernest Allen senior citizen is a resident of Springfield MA, County of Hampden,
   and a citizen of the United States.

7. Defendant Lustig Glaser & Wilson P.C (hereafter Lustig) is a "debt collector" as defined by
   15 U.S.C. 1692a (6) and a "furnisher of information" as defined by 15 U.S.C. g 1681s-2a,
   "user of information" as defined by 15U .S.C. g 1681m, and a for-profit company organized
   in Massachusetts they are located at 245 Winter Street #300, Waltham, MA 02451.

8. Defendant Derek S. Rogers is an attorney that works at the law Firm of Lustig Glaser &
   Wilson P.C and he is a "debt collector" as defined by 15 U.S.C. 1692a (6) he is located at
   245 Winter Street #300, Waltham, MA 02451.

9. Defendant Kenneth Wilson is the President of Lustig Glaser & Wilson P.C and he is an
   attorney and he is a "debt collector" as defined by 15 U.S.C. 1692a (6). he is located at 245
   Winter Street #300, Waltham, MA 02451.

10. Defendant Dean A. Heinold is an attorney that works at the law Firm of Lustig Glaser & Wilson P.C and he is a "debt collector" as defined by 15 U.S.C. 1692a (6) he is located at 245 Winter Street #300, Waltham, MA 02451.

11. Defendant Lily Haas is a Legal Specialist at Midland Credit Management Inc. she is a "debt collector" as defined by 15 U.S.C. 1692a (6) and she is located at 16 McClelland Road, suite 101, St. Cloud, MN 56303

12.   Defendant Midland Credit Management Inc. (hereafter MCM) is a "debt collector" as defined by 15 U.S.C. 1692a (6) and a "furnisher of information" as defined by 15 U.S.C. g 1681s-2a, "user of information" as defined by 15U .S.C. g 1681m, and a for-profit limited liability company organized in Delaware that is a wholly owned subsidiary of Encore, with a usually address of San Diego, CA, 492123.

13.   Defendant Midland Funding, LLC, ('Midland") is a "debt collector" as defined by 15 U.S.C. 1692a (6) and a "furnisher of information" as defined by 15 U.S.C. g 1681s-2a, "user of information" as defined by 15U .S.C. g 1681m, and a for-profit limited liability company organized in Delaware that is a wholly owned subsidiary of Encore, with a usually address of8875 Aero Drive, Suite2 00, San Diego, C A 492123.

14.   Defendant Encore Capital Group, Inc. ("Encore") is a "debt collector" as defined by 15 U.S.C.1681a(6) and for profit corporation organized in Delaware which has Its principle place of business located in San Diego, CA, lists its San Diego Operation as addresses 8875 Aero Drive, Suite2 00,San Diego, CA 492123.

## FACTUAL ALLEGATIONS

15. This case is over $75,000 in violations committed by the defendants.

16. All conditions precedent to the bringing of this action has been performed **(Exhibit 1)**.

**Defendants' Specific Collection Conduct regarding Plaintiff (Ernest Allen)**

17. Defendant Encore is liable for the actions of Defendants Midland Funding and MCM
    pursuant to the doctrine of respondent superior because they conducted the actions described
    herein while acting under the direct control and decision-making Encore and for its
    direct benefit.

18. Defendants Encore, Midland Funding and MCM Kenneth, Derek, Dean, Lily , Lustig and
    John Doe 1 falsely represented the character, amount and legal status of the alleged debt in
    plaintiff Springfield , which is contrary to 15 U.S.C. §1692e(2).

19. Defendant Lustig, Midland, MCM, Encore, and Lustig the defendants pulled the plaintiffs
    consumer credit report without his permission from Trans Union, Experian or Equifax
    causing plaintiffs credit score to come down stating that they had a permissible purpose
    under 1681 (B)(A)(3)(a).

20.    The affidavit of Lilly Haas (Exhibit 6) failed to inform the Plaintiff (Ernest Allen) that
       the Defendants were debt collectors, that they were attempting to collect a debt, and/or
       that any information obtained would be used for that purpose, in violation of 15
       U.S.C.§1692e(11).

21. The defendants Lustig, Midland and MCM has pulled Plaintiff Consumer Credit report,
    plaintiff has no business dealings with defendant and does not know why the defendant is in
    plaintiffs consumer credit file.

22. The defendants Lustig, Midland, MCM, has pulled the plaintiffs consumer credit report
    without his permission and plaintiff does not have an account that meets the definition of
    account under the Fair Credit Reporting Act 1681 (B)(a)(3)(a).

23. Defendant Kenneth Wilson (hereafter Kenneth), Derek S. Rogers (hereafter Derek), Dean A. Heinold (hereafter Dean), and Lily Haas (hereafter Lily), Lustig Glaser & Wilson P.C.

24. John Doe 1 whom was representing Lustig and Encore, Midland, and MCM at the trial in Springfield State Court on March 25, 2015 when she stated I was being sued for over $3000 including attorney's fees on the account, which was contrary to the FDCPA 15 U.S.C. §1692e (2) by falsely representing the character amount and legal status of the alleged debt, and the Massachusetts Unfair & Deceptive Trade Practices Act (MGL 93a).

25. Defendant Kenneth, Derek, Dean, Lily, Lustig and John Doe 1 are liable under the FDCPA they signed letters and an affidavit (Lily) claiming to have firsthand knowledge.

26. Plaintiff has suffered embarrassing denial of credit and is paying a higher interest rate (Car Loan) due to defendants Inquiries and reporting on plaintiff's credit reports and has been damaged and needs relief.

27. The inquires on plaintiffs credit report looks as if the plaintiff has been applying for credit from the defendants Midland, MCM and Lustig.

28. Plaintiff pulled his consumer credit reports from the three major credit reporting agencies and found entries by entities (Lustig, MCM & Midland) that he was unfamiliar with in the reports (**Exhibit 2**).

29. Plaintiff determined that his consumer credit report had been pulled on various occasions by Lustig, MCM & Midland that he did not recognize and without his consent.

30. Defendants Midland, MCM, Encore , Lustig, Kenneth, Derek, Derek, Dean ,Lily all have participated in collecting on a different amount which is contrary to the Federal Debt Collection Practices Act, Massachusetts Unfair & Deceptive trade Practices Act (MGL 93a) and other Federal & State Laws.

31. The defendants Midland, MCM, Encore, Lustig, Kenneth, Derek, Dean, and Lily tried to collect approximately $3134.04 this character amount is incorrect when they took plaintiff to Springfield district court, and the amount is contrary to the Federal Debt Collection Practices Act and the Mgl 93a.

32. Defendant Midland, MCM, Encore, Lustig, Kenneth, Derek, Derek, Dean, Lily all participated in trying to collect approximately $3134.04 from plaintiff by suing me in the Springfield District court.

33. Plaintiff was taken to trial by an attorney (John Doe 1) (See Exhibit 3) that refused to give her name to plaintiff after the Springfield State court trial, John Doe 1 tried to add on over approximately $1000 in attorneys fee to the debt, I pointed it out to the magistrate and then she stated she would waive the attorney's fees removed which is contrary to the FDCPA and the MGL 93a plaintiff won at trial the case was dismissed (See Exhibit 3).

34. John Doe 1 produced and Affidavit from defendant Lily Haas whom claimed in it plaintiff made his last payment on March 14, 2011 for the record plaintiff states he has not made a payment on this said account since March of 2008 which is 7 years and 3 months.

35. Even the statute of limitation for Massachusetts is 6 years but Chase Bank USA N.A is a Delaware Corporation and under the law the defendants has to go by Delaware 3 year statute of limitation because that's is where the injury occurred.

36. The defendants are venue shopping when they by these debts that are past the statute of limitation defendants Encore, Midland and MCM uses this strategy when buying debt, this why they obtain them for under 4.2 cents on the dollar, according to Brim v Midland deposition defendants Encore, Midland and MCM testified under oath that the 4.2 cents represents the amount including all expensive to collect the debt also.

37. Defendant Encore, Midland and MCM tell the debt seller that the debts are over the statute of limitation and it will be almost impossible to collect on them so defendant Encore, MCM and Midland receive these debt for 4.2 cents on the dollar after the debt buyer agrees that the debts are over the statute of limitation in Delaware where the injury occurred when the default happened.

38. MCM, Midland and Encore are in fact, separate entities; as such MCM, Midland and Encore have all been named as Defendants in this Complaint.

39. According to the California Secretary of State website, MCM, Midland and Encore,
    *Operate out of the same address which is listed as: 8875 Aero Drive, Suite 200,*
    San Diego, C.A, 492123.

40. Defendants Midland, MCM & Lustig is reporting and or has pulled plaintiffs credit report and the plaintiff has never given the defendants Midland, MCM & Lustig express permission to pull or report any bogus accounts on his consumer credit report with Trans Union, Experian or Equifax.

41. Defendants Midland, MCM has assigned plaintiff an account number to make it look as if they are original creditors which is contrary to the FDCPA.

42. Plaintiff has suffered embarrassing denial of credit due to defendants Inquiries and reporting on plaintiff's credit reports and has been damaged and needs relief.

43. Plaintiff found after examination of his consumer credit reports that Defendants, Midland had been reporting false and erroneous information to all three credit reporting agencies Plaintiff had never had any business relationship of any kind with the above defendants.

44. On or about September 20, 2014 plaintiff pulled his consumer credit report from Experian, Equifax & Trans Union and found that defendant Lustig had pulled his credit report on three different occasions *06/24/14, 02/12/13 & 09/14/12*.

45. On or about September 20, 2014 pulled his consumer credit report from Trans Union, Equifax and Experian plaintiff found that defendant Midland was report several bogus account on plaintiff's credit report.

46. The FCRA, 15 U.S.C. § 1681b defines the permissible purposes for which a person may obtain a consumer credit report.

47. Such permissible purposes as defined by 15 U.S.C. § 1681b are generally, if the consumer makes application for credit, makes application for employment, for underwriting of insurance involving the consumer, or is offered a bona fide offer of credit as a result of the inquiry.

48. Plaintiff has never had any business dealings or any accounts with, made application for credit from, made application for employment with, applied for insurance from, or received a bona fide offer of credit from the Defendants Midland, MCM.

49. Plaintiff points out to the court that the definition of *"account" set forth in 15 U.S.C. § 1693a(2) specifically excludes "an occasional or incidental credit balance in an open end credit plan as defined in [15 U.S.C. § 1602(j)]."As credit card accounts are generally considered to be open end credit plan* (See Exhibit 4 Joseph N. Laplante United States District Judge Order N.H).

50. FCRA in 15 U.S.C. §1681a(r) (4) states: The terms "account" and "electronic fund transfer" have the same meanings as in section 1693a of this title (See Exhibit 4) .

51. (2) the term "account" means a demand deposit, savings deposit, or other asset account (other than an occasional or incidental credit balance in an open end credit plan as defined in section 103(i) of this Act), as described in regulations of the Board,

established primarily for personal, family, or household purposes, but such term does not include an account held by a financial institution pursuant to a bona fide trust agreement;

52. ***The definition of "account" clearly does not include an account such as a credit card open end credit account but does include a demand deposit account, savings deposit or other asset account which is wholly different.*** The Plaintiff (Ernest Allen) never had any such account so there was obviously no permissible purpose for the credit pull.

53. Discovery of violation brought forth herein occurred on September 20, 2014 and is within the statute of limitations as defined in FCRA, 15 U.S.C. § 1681p.

54. On March 25, 2015 plaintiff filed suit in the federal court at that time defendants where still reporting on plaintiffs credit report which is contrary to the FDCPA and FCRA.

55. Defendant Encore doesn't operate independent of MCM and Midland it doesn't have separate management separate business and income. Instead, it serves as the name of the Encore family of subsidiaries all of whom are interrelated and inseparably operated as a single business operation that is engaged in the business of purchasing debt information and attempting to collect after paying pennies (4.2 cents ) on the dollar for said information. Each of these entities however commit violations against consumers individually as if they were in fact separate entities.

56. When purchasing portfolios of debt information, the Defendants MCM, Midland & Encore make an intentional business decision not to obtain competent evidence as to whether written contracts exist between the original creditors of the debts and the consumers or if there was other documentation showing when or how the debts were incurred. There is little to no documentation beyond very rudimentary information which would allow them to calculate

the amount of debt owed by a consumers ie,  *name, last known address telephone number,*
*social security number, amount alleged to be due, name of original creditor, original*
*account number and current owner of the debt.*

57. *It would appear that defendants, Encore wasted no time in violating their recent*
*commitment to the Federal Trade Commission to correct their dishonest, illegal and*
*egregious business practices in regard to the Consumer Protection statutes Congress saw*
*fit to put in place.*

58. Defendants MCM, Midland & Encore are "inextricably intertwined" and/or connected in the
actions alleged in this action.

59. Defendants MCM, Midland & Encore are each the alter ego of the other.

60. As to Defendants MCM, Midland & Encore the corporate fiction should be disregarded as it
is being used as a means of perpetrating fraud and/or abuse of the corporate structure while
routinely violating federal consumer protection statutes in an attempt to obtain unjust
enrichment while accepting the risks of such violations as a mere cost of doing business.

61. Defendants Midland, MCM, Encore , Lustig, Kenneth, Derek, Derek, Dean ,Lily actively
participated in the acts or omissions which are the subject of this suit and sought to benefit
from the actions alleged in this complaint.

62. Plaintiff has sent defendant MCM, Midland, Encore a Notice of Intent to Sue, MGL 93a
Demand Letter & a Cease & Desist Letter to mitigate damages.

63. Defendants Midland, MCM, Encore and Lustig does not have, and has never had an established
business relationship with Plaintiff.

64. Encore, at least" indirectly" engaged in the attempted collection of an alleged consumer debt.

65. Encore is a debt buyer that owns Midland Funding LLC and Midland Credit Management.

66. Defendants Midland, MCM, Encore and Lustig filed a time barred debt against plaintiff which is a violation of the FDCPA, MGL 93a: Time-barred Debt means any debt that is not enforceable in a judicial proceeding because the applicable statute of limitations has run under the FDCPA and MGL 93a.

67. Plaintiff sent defendant Midland, MCM, Encore Capital and Lustig a Massachusetts Unfair & Deceptive Trade Practices Act Demand letter on March 21, 2015 and they received it on or about March 24, 2015.

68. The debt that is at issue was from Chase U.S.A which is a Delaware corporation the statute of limitation is 3 years in Delaware which is the state where the injurie took place.

69. Defendant Midland, MCM and Encore cannot be in a better position that the original credit but trying to use Massachusetts Statue of limitation is contrary to the FDCPA and the MGL 93a. (See Exhibit 5 Case law regarding Delaware statute of limitations).

70. The defendant Kenneth Wilson sent a confidential email to plaintiff that was and is contrary to the FDCPA § 1692 e (5) Threaten to take any action that cannot legally be taken or that is not intended to be taken § 1692 e any other false, deceptive, or misleading representation or means in connection with the debt collection (See Exhibit 8).

71. The letter threatened to take a legal action that cannot legally be taken, in defendant Kenneth letter to plaintiff he stated "I've instructed attorney Hogemcamp to immediately thereafter file a Motion to Dismiss similar to the one we filed in the Veal (which as I pointed out earlier *resulted in a dismissal of the case as to ALL defendants not merely as to us) and to seek cost and attorney's fees. Your call.*

72. *The email (Letter) is contrary to the FDCPA because the motion to dismiss and the dismissal of Veal's case was not subject to cost and attorney's fees and is also on appeal in the First*

*Circuit Court of Appeals and defendant Kenneth states the dismissal is final which is not true, the First Circuit of Appeals will have the Final judgment, the plaintiff believes that defendant Kenneth is threating to have the plaintiff pay all cost and attorney's fees just like he got Veal to pay all cost and attorney's fees this is a direct violation of the FDCPA.*

73. *Defendant Kenneth cannot go around threating the plaintiff because the plaintiff has filed a lawsuit against the defendant for his and other attorneys in his office for their bad behaviors while trying to collect a debt, this is what Congress intended all consumer to do that why Congress gave the consumer a chance to receive up to $1000 from each defendant that violated the FDCPA it is an incentive to hold defendant accountable for their violation of plaintiffs Civil Rights.*

74. *The plaintiff sent a simple demand for settlement as defendant Lustig stated that we need to settle the lawsuit the defendant Kenneth is a Bar licensed attorney that understands the FDCPA and other consumer laws that are contrary to his action.*

75. *This is in direct contrary to the FDCPA which Congress passed to stop attorneys from confusing the least sophisticated consumer, the majority of federal circuit courts have adopted "the least sophisticated consumer" standard in analyzing claims brought under the <u>Fair Debt Collection Practices Act (FDCPA)</u>. The least-sophisticated consumer standard is consistent with FDCPA's goal of expanding the consumer protections originally provided by the Federal Trade Commission Act.*

76. *The purpose of the Least-sophisticated-consumer standard, here as in other areas of consumer law, is to ensure that the FDCPA protects the gullible as well as the shrewd consumer, there is no proof of actual deception of the consumer necessary.*

77. Defendant Lustig used Chase Bank USA N.A (Here after Chase) name in the caption of the lawsuit to sue plaintiff in Springfield Ma State court when in fact the Chase Contract (See Exhibit 7 Contract ) states "**Use of Seller's Name**

(a) In any litigation which Purchaser undertakes to collect monies owed on the Charged-off Accounts, Purchaser shall not sue in Seller's own name and shall not include the Seller's name in the caption of the action, either as a plaintiff or in any other capacity, defendant Lustig and Kenneth and attorney did add Chase name to the lawsuit (See Exhibit 3) which is contrary to the FDCPA under the *Least-sophisticated-consumer standard, consumer thought that Chase Bank USA N.A was suing him and using Lustig Law firm but they were not this is contrary to the Least-sophisticated-consumer standard* is collection communications with a consumer's attorney plaintiff demand $1000.


### DEFENDANTS' ENCORE, MIDLAND & MCM DEBT BUYING OPERATION

78. Defendants Encore, MCM and Midland accomplish their debt-buying operation by purchasing multiple multimillion dollar portfolios of credit accounts that have been charged off by their original creditor. Most of these are credit card accounts that have past the three year statute of limitation from the in this case Chase Bank USA whom is a Delaware Corporation and that understands these debts are past the statute of limitations when sold to the defendants Encore, Midland and MCM, Chase.

79. Because acquired debt portfolios involve old debt and because debt buyers typically only acquire an electronic file about the debt and not actual copies of underlying charge slips, account statements, signed contracts, etc.,

80. Chase Bank USA NA and other Delaware Corporations sells the defendant Encore, Midland and MCM charged off and under the Delaware statute of limitation time barred, also defendants Encore, Midland & MCM only receive spread sheets of consumers name address and amount (*See http://www. dalie.org/contracts/*), this is public knowledge and plaintiff downloaded a Chase Bank USA N.A contract for the sale of old debt to Midland this is not confidential records.

81. *Under the debt buyer or sellers contract Chase Bank USA NA states to Midland "Sale of Accounts (a) Purchaser represents and warrants to Seller that Purchaser's primary purpose in purchasing Charged-off Accounts is to attempt legal collection of the Unpaid Balances owed on such Charged-off Accounts and is not to commence an action or proceeding"* which they did not abide by the contract, (See Exhibit 7).

82. Under **Representations and Warranties of Purchaser Chase Bank USA N.A clearly informs Midland that "(**a) Purchaser is a limited liability company duly organized, validly existing and in good standing under the **laws of Delaware** with full power and authority to enter into this Agreement, to purchase the Charged-off Accounts, and to carry out the terms and provisions hereof, Delaware Debt Collection Laws  Statute of Limitations, Contract 3 years The statute of limitations runs from "the date the debt accrues."(See *http://www.nationallist.com/image/cache/White_Paper_Delaware_Debt_Collection.pdf*).

83. The personnel and resources used to accomplish and transact these purchases are nearly all those maintained in the name of Encore. Encore employees negotiate the deals and purchase the portfolios, regardless as to whether or not Encore then titles them in the name of Midland Funding.

84. When Defendants Encore, MCM and Midland collectively purchase debt portfolios, such as the Chase portfolio that contained the alleged Plaintiffs account, they do not actually purchase anything other than the theoretical claim of ownership. There are no notes assigned. No contracts are transferred. All that Defendants actually purchase is an electronic list of consumers and their last known addresses with an amount the creditor claims to have been owed. Often the interest rate is not included, dates of birth or social security numbers are not included, and addresses have not been updated.

85. Defendants Encore, MCM and Midland do not actually purchase and receive the credit contracts, their specific terms, payment histories, sales or billing documents and other documents absolutely necessary to properly prosecute and collect a debt or even to know with any reasonable degree of confidence that a specific debtor opened, used and then failed to pay a debt in a specific amount.

86. In fact, though Defendants Encore, MCM and Midland will in contested collection cases produce what is claimed to be an original card member agreement or document containing terms and conditions of a credit card account, these documents are false. Instead, creditors who do transfer or make available later the "terms and conditions" or card member agreements do not provide Defendants the actual agreement or documents for that specific account Instead, the creditor provides and the Defendants Encore, MCM and Midland retain only a generic sample contract, which they later represent to Courts as the genuine contract for that specific consumer account.

87. For a number of years, debt buyers such as the Defendants Encore, MCM and Midland did not need this information or these documents because they had created a means to circumvent the rigors and fairness of state court – the law firm that did nearly all such

collection work nationally had secretly purchased a company – previously founded by the credit card industry – the National Arbitration Forum and used it as a means to avoid the proofs required by actual judges. See e.g.

*http://www.businessweek.com/magazine/content/08_24/b4088072611398.htm; Midland Funding NCC-2 Corp. v. Johnson*, 2008-Ohio-3900.

88. However, this golden goose collapsed for Midland and its industry affiliates when the National Arbitration Forum was exposed by the Minnesota Attorney General as a front owned by the same collectors that claimed that the entity was a genuine neutral arbitrator.

89. The NAF thereby consented to end all consumer arbitration and the national collection firm – Mann Bracken – was placed into receivership

http://www.nytimes.com/2009/07/20/business/20credit.html. The State of Maryland judiciary even issued an order staying litigation and, where appropriate, vacating all of its Maryland judgments.

90. As a result, the Defendants Encore, MCM and Midland have found it necessary to return to the practice of filing civil lawsuits to collect, but were faced with having to do so for accounts lacking any of the information, let alone documents necessary to prove a case by a preponderance of evidence, or even in a default posture by District Court judges who *sua sponte* began to demand more rigorous proof from debt buyers.

### Defendants' Fraudulent Affidavit Process was enjoined

91. Following the collapse of the NAF, the Defendants Encore, MCM and Midland have returned to the practice of litigation against consumers as a means to collect the purchased accounts. In fact, the majority of its revenue is derived from these "legal collection" collection channels. Defendants Encore, MCM and Midland have established relationships with almost 100

different debt collection law firms in the country who serve less in the capacity as legal counsel like defendant Lust and their attorneys , and more as an outsource vendor. The law firms are paid a contingency percentage of recovery and neither exercise control over any Defendant Encore, MCM and Midland nor do they submit to control over their own practices by the Defendants.

92. In 2008, in an otherwise routine collection action brought by MCM or Midland Funding in an Ohio state court, it was discovered that the *affidavits used by Defendants* (Like the one in plaintiffs Springfield state court case) Encore, MCM and Midland in that case and all others were materially false. Specifically, the Ohio consumer discovered:

(a). the Midland affidavits were not generated by any of the Defendants, but instead by the third party law firms who inputted the material information (e.g. principal, interest, original creditor, etc) into an online computer program (www.YouveGotClaims.com) and then requested the type of affidavit desired;

(b). the affidavits were then printed on an affidavit printer in Defendants' office, usually hundreds or even thousands at a time;

(c). clerical employees of MCM were assigned the task of signing over 200 affidavits per day. They "find the stack on a printer, signs them, and send them by internal mail to the notary. ("Q: Where do your affidavits come from? A: As far as what I deal with, they just come from the printer as far as where we get them"))." *Midland Funding LLC v. Brent*, 644 F. Supp. 2d 961, 966-67 (N.D. Ohio 2009) *modified on reconsideration,* 308CV1434, 2009 WL 3086560 (N.D. Ohio Sept. 23, 2009);

(d). the MCM employee never read the affidavits or checked them against the actual material and substantive account records to determine their truth or validity;

(e). the affidavits contained numerous material falsehoods. They misrepresented the personal knowledge of the affiant; that she had reviewed the actual contract documents regarding the account; or even that such documents existed.

93. Following the Ohio discovery of this pattern of falsehoods (and removal to federal court), the consumer in that case moved for summary judgment and obtained it. In addition, the Ohio federal court enjoined Defendants *"from using form affidavits that falsely claim to be based on the affiant's personal knowledge." Midland Funding LLC v. Brent, 308CV1434, 2009 WL 3086560 (N.D. Ohio Sept. 23, 2009).*

94. The Ohio federal court stated, "However, this Court finds that the affidavit as a whole is both *false and misleading for the aforementioned reasons and notwithstanding the fact that some of the data in it are correct. It is unclear to this Court why such a patently false affidavit would be the standard form used at a business that specialized in the legal ramifications of debt collection." Midland Funding LLC v. Brent,* 644 F. Supp. 2d 961, 969 (N.D. Ohio 2009) *modified on reconsideration,* 308CV1434, 2009 WL 3086560 (N.D. Ohio Sept. 23, 2009).

95. *Notwithstanding that Defendants were so ordered and warned, they continued long past the September 2009 injunction to falsely represent to state courts and to the consumers they sued that their collection affidavits were based on the affiant's personal knowledge. Accordingly, in early 2011, Defendants were forced to attempt a national settlement of all claims for a class defined to include: "All natural persons:*

*(a) sued in the name of Encore Capital Group, Inc., Midland Funding, LLC, Midland Credit Management, Inc., or any other Encore and/or Midland-related entity (collectively, "Midland"),*

*(b) between January 1, 2005 and [March 9, 2011], (c) in any debt collection action in any court (d) where an affidavit attesting to facts about the underlying debt was used by Midland in connection with the debt collection lawsuit."*

*96.* The Ohio Court found that the claims of consumers for affidavits created before the August 2009 injunction were common and typical with those for affidavits created after August 2009.

97. Notwithstanding that Defendants actually settled a national class action based in significant part on the affidavit procedures they continued to use through at least December 9, 2011 (See Exhibit 6 Lily Haas Affidavit used in Springfield Ma state court against the plaintiff contrary to the FDCPA & MGL 93a), Defendants have not materially changed them since 2009.

98. The only major difference between the procedures Defendants Encore, Midland & MCM used as discovered and enjoined in Ohio and those used today is that Defendants Encore, Midland & MCM now claim that their employees actually read the affidavit and have it signed in front of a notary. Nothing else has materially changed.

99. For example, Defendants Encore, Midland & MCM still rely on the outside collection law firms to create the affidavits. The law firm enters all of the unique information in the affidavit. The MCM computer then inserts the information field values provided by the outside firm into the relevant blanks in the form affidavit. The MCM printer then prints all affidavits in the system early in the morning each day See Ohio State v Midland).

100. Just as before the Ohio class case, the MCM computer inserts the name and address for the clerical employee who will have to sign the affidavit. Each set of affidavits is essentially assigned in a random manner to specific clerical employees based on a supervisor's allocation of percentage of work to be divided that day. The affidavits are printed in alphabetical order by

state. Then, as many as 400 at a time are dropped at the desk of each assigned affiant employee.

101. Before August 2009, the procedure was to sign without ever reading. Today,

Defendants claim that their employees are required to read each affidavit. Notwithstanding such

claims, MCM employees have testified as late as December 2010 that even after the 2009

changes, the affidavits were still often signed without reading or were signed outside the

presence of the notary.

102. However, absent actual and personal knowledge of the substantive account records

and documents, it is immaterial as to whether or not the affiant reads the affidavit. *The affiant's*

*statements and claims to the contrary in a sworn affidavit are perjurious.*

103. Defendants' Encore, Midland and MCM current affidavits and affidavit procedures are

materially dishonest in two important ways. First, they continue to include objectively false

statements. These include,

using Plaintiffs affidavit (**Exhibit "6"**) as an example:

*a. that the affiant "has access to pertinent account records[.]"*

*b. that the affiant makes the statements in the affidavit, "based upon personal knowledge*

*of those account records maintained [by Midland Funding]."*

*c. that the affiant has "access to and ha[s] reviewed the records pertaining to the*

*account[.]"*

*d. that the affiant is "familiar with the manner and method by which MCM creates and*

*maintains business records pertaining to the account."*

*e. that the witness has personal knowledge and knows that the records were kept in the*

*regular course of business, (and how and by whom).*

*f. that the affiant has personal knowledge of the existence and amount of the asserted debt balance.*

*g. if called to testify in court, the affiant would be competent to testify under oath to all contents in the affidavit.*

*104.* The affiant clerical employees Lilly Haas do not have access to any account records. Instead,

they use a single, one-page custom designed computer screen – a program used solely for the Affidavit process – titled the "Validation" screen. The validation screen lists the values (See Deposition in Brim v Midland) for each of the fields that were inputted by the collection law firm and requires the clerical employee only to compare the value in the field with the value contained in the affidavit, and check a box for each field that is different.

105. These procedures are not optional. The MCM and or Midland clerical employees are not permitted to review or access actual account records or documents in "validating" and then signing the "sworn" affidavits.

106. Defendants' current affidavits and affidavit procedures are also materially dishonest in a second even less-scrupulous way. Defendants MCM and or Midland have created and redefined internally language that they contemplated would be misinterpreted by the reviewing judge in the collection matter not so in plaintiff Springfield State case. The affidavits are manufactured using language that Defendants tell their clerical affiants would mean something other than the rest of the world would understand.

107. For example, the affiant in the Brim v Midland case testified that she is a "custodian" of Defendants' business records. But, according to her account of her employer's instructions, so is every single employee in the company's large Minnesota facility other than the mail clerk.

Literally. She has been informed by Defendant MCM and or Midland that when she claims to be a custodian of records in the affidavits MCM puts in front of her to sign, this merely means that she has, at some moment in time, looked at some of the account information in one or more of Defendants millions of records.

108. Similarly, the Defendants Encore, MCM and Midland have taught their affiant employees to believe that a "business record" is the value entered in the several fields in the "validation" screen (See Brim v Midland pleadings). So, for example, using Exhibit "6", the actual words "Business Record" would be a business record by the definition Defendants Encore, MCM and Midland have taught to their affiant Lilly Haas. Thus, when the employee (Lilly Haas) testifies under oath, "I have reviewed the business records for this account", she is really meaning, "I have read the data contained in MCM and or Midlands computer and or spread sheet.

109. Defendants Encore Midland and MCM have created several PowerPoint presentations that have been used by Encore management (and counsel) to "teach" this MCM-specific language (the redefined language in its collection affidavits) to its clerical affidavit team. For example, Encore and MCM use the language, "I have access to pertinent account records" in their affidavits. Behind the scenes, they then tell their employees, this means only "I have access to the programs I need to verify the information in this affidavit." (Defendants MCM and or Midland validation computer screen). Defendants' procedures are full of such mis-use of language according to MCM employee's deposition in the Brim v Midland case.

110. Defendants' MCM and or Midland affidavits also consistently reference their affiant's access to and personal knowledge and review of an account's "business records" or "account records." This, for Defendants MCM and or Midland, will never mean or refer to credit card statements, assignment documents from the original creditor, card member agreements,

consumer correspondence, or even electronic recordings of such documents. Instead, it simply means the MCM and or Midland computer Validation screen that Lilly Haas has access to which is a screen and data summary that is not regularly maintained or used by Defendants MCM and or Midland for any purpose other than the affidavit-signing ceremony.

111. The validation screen summary is simply a search results output. Claiming personal knowledge of the underlying records and information after reading the one page validation screen is comparable to someone performing a Google search, reviewing just the one page of results links (and not even the linked-websites themselves) and then claiming to have personal knowledge of all of the information that would have been found at the various sources there listed.

112. As another example of defendant Encore, MCM and or Midlands dishonest language, when Defendants' Encore, MCM and or Midlands affidavits reference the original creditor's "actual agreement applicable to a [consumer], or an exemplar of such agreement", they inform their clerical affiants that this really just means, "credit card terms and conditions/ agreements that may have been the one that was issued[.]" Defendants Encore, MCM and or Midlands keep an electronic database of sample terms and conditions of various credit card agreements in a system named "Xdocs".

113. Defendants' policy and procedures documents, which are not attached hereto because They were inappropriately designated by Defendants Encore, MCM and Midland as confidential in the Brim v Midland case and not available on Pacers are stated by attorney Leonard Benet (Attorney for BRIM in the BRIM v MIDLAND case) to be filled with similar linguistic dishonesty.

114. The MCM collection affidavits are created and provided for use in collection courts

around the country. For example, (in the plaintiffs Springfield Ma state court case) they are most often used to present to Court judges as a means to prove the existence, terms and balances of the collection credit accounts. Accordingly, when Defendants MCM and or Midland and their attorneys drafted the form affidavits (in house and in an outside law firm that conspired to draft the form affidavits), they did so for the purpose of intended misdirection. They are designed to leave a collection court believing facts that are other than the affiant was verifying.

115. Translated to the language that a General Court would interpret in the same manner as the affiant could honestly attest, the Defendants' affidavits would have to say:

"I am employed by MCM for the single purpose of signing collection affidavits. I am not responsible for and have no involvement in or knowledge of the facts regarding how Encore acquired this account, let alone its history prior to that point. I have not reviewed any underlying documents, account history, or other business records. What I did do is to enter the account number listed in the printed affidavit into a search screen we call "Validation Screen" and then compare the basic information in the affidavit against the values in the search screen output."

116. Defendants' MCM and Midlands conduct and procedures in creating, executing and presenting to courts and consumers the pre- and post-2009 affidavits (including the one that is the subject of this action) is both overtly fraudulent and as well fails to conform to societal standards of moral uprightness, fundamental honesty, and fair dealing.

117. Once signed and notarized, Defendant Encore, MCM's and Midlands employees place the affidavit in an envelope to be sent via the United States Postal Service or other public mail carrier and mailed to the local collection firm (Lustig) to be used in a collection lawsuit.

118.In addition to the exchange of the affidavits by mail, on information and belief,

the Plaintiff alleges that the same parties exchange money across state lines by either bank wire

or mail.

119. Upon information and belief, the third party law firms and the Defendants also

exchange numerous documents besides the unlawful affidavits by mail and have ongoing and

regular telephone communications across state lines.

120. In addition to the deceit contained within the MCM affidavits, Defendants MCM and

Midland produce "computer generated credit card statements" attachment, stapled to the

affidavits that are mailed back to the law firm's office.

121. These act are contrary to (Violation of 18 U.S.C. §1961 - Racketeer Influenced and Corrupt

Organizations Act) which was one of the counts in James v Midland that was settled out of court

by defendant Encore, MCM and Midland.

122. These same counts are ripe to add in this complaint is well and plaintiff will seek to amend

his complaint with those same counts once plaintiff has had a chance to depose Lilly Haas,

Kenneth, and the other attorney defendants.

## DEFENDANTS' ENCORE, MCM & MIDLAND MOTIVES

123. Encore's business model depends almost entirely on – and even more certainly than

is so with other for-profit businesses – reducing and capping its costs of doing business. More

precisely, Encore's focus has been the cost-efficiency of its collections, its cost incurred per

dollar collected.

124. For example, in its most recent Annual Report (10k), Encore explains: "Cost

efficiency is central to our collection and purchasing strategies. We experience considerable cost

advantages, stemming from our operations in India, our enterprise-wide, activity-level cost

database, and the development and implementation of operational models that enhance profitability."

125. And Encore concedes in its Annual Report, "These receivables are difficult to collect, and we may not be successful in collecting amounts sufficient to cover the costs associated with purchasing the receivables and funding our operations. If we are not able to collect on these receivables or collect sufficient amounts to cover our costs, this may materially and adversely affect our results of operations." As of early 2011, Encores costs of collection were 4.2¢ for every dollar collected.

126. With the return to litigation as the necessary and most important means for Defendants to collect from consumer debtors, Defendants have been forced to confront the expense and difficulty of proving their collection cases in courts of law. Nearly every court system in the nation requires some degree of proof – of testimony, written or otherwise.

127. Defendants have met this obligation by use of their collection affidavits, required by many courts and certainly those in Massachusetts, to be under oath and based on personal knowledge.

128. However, drafting, reviewing and honestly confirming the substantive content of a collection affidavit takes time. An employee would need to review actual business records and substantively confirm the validity of the asserted indebtedness. According to the deposition of MCM and Midlands employees in the Brim v Midland case depositions clerical employees may sign close to 400 affidavits a typical workday. Assuming a one hour lunch, two 15 minute breaks and 1 hour spent doing nothing but signing collection affidavits before a notary that leaves 5.5 hours, or 330 minutes available to an affiant for reading and "validating" collection affidavits. If

the employee does so for only 300 affidavits, that leaves barely one minute to read and then "validate" each affidavit.

129. According to the deposition of MCM and Midlands employees in the Brim v Midland depositions Defendants Encore, MCM and Midland have created this assembly-line, "read and sign" process in order to protect their extremely low 4.2¢ per dollar costs of collection and to maximize profit at nearly all cost which plaintiff will prove that was still going on when the Lilly Haas affidavit was created for the Midland v Ernest Allen case that was dismissed in Springfield State court.

130. According to the deposition of MCM and Midlands employees in the Brim v Midland depositions Defendants Encore, MCM and Midland have fired at least one clerical affiant employee who did not produce a sufficient quantity of signed affidavits. Beyond Defendants' Encore, MCM and Midland sacrifice of honesty for cost control, it has adopted its affidavit language and process for another improper means. The truth is that for most of its purchased accounts Defendants could not obtain even default judgments against consumers if it told the truth.

131. The litigation affidavit by defendant Lilly Haas in plaintiffs state case was created and deliberately worded to conceal from the plaintiff and from the Springfield court that MCM or Midland does not maintain any records, documents, applications, or other admissible and necessary evidence that the target debtor actually opened or used the account and thus owes money to an originating creditor.

132. If Defendants Midland, MCM, Encore, Lustig, Kenneth, Derek, Derek, Dean, and Lily revealed the truth in their affidavits, there would be no legal basis by which they could obtain a civil judgment in a Massachusetts court. For example, many General

District Courts have crafted unique procedures to confront the debt-buyer problem by requiring that a debt buyer must show that it possesses billing statements, a credit contract or other documentary proof before it can collect most, if not all, of its asserted accounts. (*See https://www.ftc.gov/sites/default/files/documents/reports/structure-and-practices-debt-buying-industry/debtbuyingreport.pdf)*

133. The issue is so conclusively established in Virginia that it was the subject of an instructional panel at the 2008 "Judicial Conference of Virginia for District Court Judges," in which three Virginia judges outlined the impediment to debt buyer lawsuits prosecuted without underlying knowledge and documents. (*Purchased Debt Cases – Don't Forget the Luggage*, Hon. Lisa A. Mayne, Judge Fairfax General District Court, Hon. Lorraine Nordlund, Judge, Fairfax General District Court, Hon. Robert A. Pustilnik, Judge Richmond General District Court – Civil).

134. Defendants bring their collection actions under a theory of "Open Account." However, John Rao, Debt Buyers Rewriting of Rule 3001: Taking the "Proof" Out of the Claims Process, Am. Bankr. Inst. J., July/August 2004, at 16, 63. Thus, Defendants would be unable to convert most of their purchased charged-off accounts into civil judgments without the false affidavits.

　

*"To plead a prima facie cause of action on open account in some jurisdictions, the plaintiff must file an affidavit verifying that the amount claimed is true and correct. Most debt buyers would be unable or reluctant to do this since they do not have supporting documentation, have no personal knowledge of the accounts in question or the selling creditor's accounting practices, and are not able to generate account reports in the ordinary*

*course of business. In other jurisdictions, even an affidavit summarily affirming the balance due is not sufficient to obtain the burden-shifting associated with prima facie validity."*

135. For Encore, given the nature and terms of its portfolio purchases of credit accounts, there are only two options – use a false affidavit or forego a civil judgment. There was no alternate possibility of correcting the affidavits to make them both truthful and viable. Accordingly, Defendants Encore, MCM, Midland Lustig and Kenneth had to create a means to misdirect judges and consumers away from its near total lack of supporting documents, records and data.

136. The Defendants Midland, MCM, Encore , Lustig, Kenneth, Derek, Derek, Dean ,Lily and John Doe 1 are each liable to the Plaintiff for his actual damages sustained, statutory damages, and reasonable attorney's fees and costs as provided for by 15 U.S.C. §1692k.

## COUNT I

## VIOLATION OF FAIR CREDIT REPORTING ACT (FCRA), 15 U.S.C. §1681

### WILLFUL NON-COMPLIANCE BY DEFENDANT MIDLAND, MCM, ENCORE & LUSTIG

137. Plaintiff incorporates by reference all paragraphs of this Complaint as though fully stated herein.

138. Plaintiff is a consumer within the meaning of the FCRA, 15 U.S.C. §1681a(c).

139. Defendant Midland, MCM, ENCORE and LUSTIG is a furnisher of information within the meaning of the FCRA, 15 U.S.C. §1681s-2.

140. Defendant Midland, MCM, ENCORE and LUSTIG willfully violated the FCRA. Defendant's violations include, but are not limited to, the following:

(a) willfully violated 15 U.S.C. §1681b(f) by obtaining Plaintiff's consumer report without a permissible purpose as defined by 15 U.S.C. §1681b.

141.    Defendant Encore is also liable for the actions of Defendants Midland Funding and MCM pursuant to the doctrine of respondent superior because they conducted the actions described herein while acting under the direct control and decision-making Encore and for its direct benefit.

WHEREFORE, Plaintiff demands judgment for damages in the amount of $1,000 against Each Defendants Midland, MCM, ENCORE and LUSTIG for actual or statutory damages,    and punitive damages, attorney's fees and costs, pursuant to 15 U.S.C. §1681n.

## COUNT II

## VIOLATION OF FAIR CREDIT REPORTING ACT (FCRA), 15 U.S.C. §1681

## NEGLIGENT NON-COMPLIANCE BY DEFENDANTS MIDLAND, MCM, ENCORE & LUSTIG

142.    .Plaintiff is a consumer within the meaning of the FCRA, 15 U.S.C. §1681a(c).

143.    Defendants Midland, MCM, ENCORE and LUSTIG is a furnisher of information within the meaning of the FCRA, 15 U.S.C. §1681s-2.

144.    Defendants Midland, MCM, ENCORE and LUSTIG negligently violated the FCRA. Defendant's violations include, but are not limited to, the following:

(a) Defendants Midland, MCM, ENCORE and LUSTIG negligently violated 15 U.S.C. §1681b (f) by obtaining Plaintiff's consumer report without a permissible purpose as defined by 15 U.S.C. §1681b.

WHEREFORE, Plaintiff demands judgment for damages in the amount of $1,000 against

Each Defendant Midland, MCM, ENCORE and LUSTIG for actual damages, punitive

damages and attorney's fees and costs, pursuant to 15 U.S.C. § 1681o.

## COUNT III
## VIOLATIONS OF THE MASSACHUSETT UNFAIR & DECEPTIVE TRADE PRACTICES ACT MGL 93
## BY DEFENDANTS Encore, Midland, MCM, Lustig, Kenneth, Derek, Derek, Dean, Lily & John Doe 1

145.    Plaintiff incorporates by reference all paragraphs of this Complaint as though

fully stated herein.

146. Plaintiff is a consumer under the MGL 93a statue.

147. The defendants Lustig, Encore, MCM, and Midland are business under the mgl 93a statue.

148. The defendant Encore, MCM, Midland, Lustig violated the mgl 93a when they sued plaintiff

on a time barred debt they purchased from Chase Bank USA N.A a Delaware corporation,

the debt had a three year statute of limitations, and when they used an affidavit that stated

defendant Lilly Haas had firsthand knowledge of the records.

149. The Defendants Lustig violated the MGL 93a when they pulled plaintiff credit report three

time therefore violating the FCRA 1681 (B)(a)(3)(a) and the FDCPA which is an automatic

violation of the mgl 93a.

150. The defendant Midland and MCM violated the mgl 93 when they reported and pulled

plaintiffs credit report without hi express permission.

151. The defendants Lustig, Kenneth, MCM, Midland, Encore, John Doe 1violations of the mgl

93a violations include, but are not limited to, the following:

a.  Reporting on plaintiff's credit report.

b.  Pulling plaintiffs credit report without his permission.

c. Assigning a new account number on plaintiff's credit reports to make it look as if they were original creditors.

d. Suing plaintiff in state court for over $3000, which is a different amount they said I owed on letters they sent me.

e. **Using unfair & deceptive language in their affidavit and at the Springfield State court trial which they loss.**

**WHERFORE**, based on facts set forth in the above counts Plaintiff demands Punitive damages, Statutory damages, and attorney's fees and cost, and to award Plaintiff triple damages and the costs of bringing this action, as well as such other and additional relief as the Court and mgl 93 a offers from defendants Encore, MCM, Midland, Lustig, Kenneth and John Doe 1.

## COUNT IV

**VIOLATION OF FAIR DEBT COLLECTION
PRACTICESACT (FDCPA), 15U.S.C. §1692
BY DEFENDANTS Encore, Midland, MCM, Lustig, Kenneth, Derek, Derek, Dean, Lily &
John Doe 1**

152.    Plaintiff incorporates by reference all paragraphs of this Complaint as though fully stated herein.

153.    Plaintiff is a consumer within the meaning of §1692a (3).

154.    Defendants Midland, MCM, Encore, Lustig, Kenneth, Derek, Derek, Dean, Lily and John Doe 1 are "debt collectors" as governed by the FDCPA.

155.    Defendants Midland, MCM, Encore, Lustig, Kenneth, Derek, Derek, Dean, Lily and John Doe 1used false, deceptive and misleading representations or means in connection with the collection of the alleged debt from the Plaintiff, in violation of 15 U.S.C. §1692e. and Defendant's Midland, MCM, Encore, Lustig, Kenneth, Derek, Derek, Dean, Lily and John Doe

1 violations include, but are not limited to, the following:

§1692d by engaging in conduct, which the natural consequence is to harass, oppress, or abuse any person.

§1692e (2) by falsely representing the character, amount, or legal status of any debt.

§1692e (5) by threatening to take any action that could not legally be taken or that was not intended to be taken.

§1692e (l0) by the use of any false representation or deceptive means to collect or attempt to collect any debtor to obtain information concerning a consumer.

§1692f (1) by the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debtor permitted by law.

§1692g by failure to send a validation notice within five days of the initial communication (Which was reporting or pulling plaintiffs credit report).

  (a) 1692e (2) (A) prohibits the false representation of the "character, amount, or legal status of any debt.

  (b) Section 1692f broadly prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt.

156.    Defendant Encore is also liable for the actions of Defendants Midland Funding

and MCM pursuant to the doctrine of respondent superior because they conducted the actions described herein while acting under the direct control and decision-making Encore and for its direct benefit.

**WHEREFORE,** Plaintiff demands judgment for damages against Defendants Midland,

MCM, Encore , Lustig, Kenneth, Derek, Derek, Dean ,Lily and John Doe 1 for  $1000.00

eachand or actual and or statutory and punitive damages, attorney's fees and costs.


### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all issues so triable as a matter of law.

Respectfully submitted this 18th day of June, 2015

_____

**Ernest Allen**

**/s/ ERNEST ALLEN**

**53 TILTON STREET**

**SPRINGFIELD, MA 01109**

**Ernestallen1@comcast.net**

**413-626-8463**

## VERIFICATION OF COMPLAINT AND CERTIFICATION

### STATE OF MASSACHUSETTS

#### Plaintiff, Ernest Allen, states as follows

I am the Plaintiff in this civil proceeding.

I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification or law.

I believe that this civil complaint is not interposed for any improper purpose, such as to harass any Defendant(s) Midland, MCM, Encore, Lustig, Kenneth, Derek, Derek, Dean ,Lily and John Doe 1 cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in this Complaint. I have filed this complaint in good faith and solely for the purposes set forth in it. Each and every exhibit which has been attached to this complaint is true and correct copy of the original.

Except for clearly indicated redactions made by me where appropriate, I have not altered, changed, modified or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.

Pursuant to 28 U.S.C. § 1746(2), I, Ernest Allen, hereby declare (or certify, verify or state) under penalty of perjury that the foregoing is true and correct.

DATE: June 18, 2015

Ernest Allen
/s/ERNEST ALLEN