UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

ERNEST ALLEN

Plaintiff

    V                                Civil Action No.15-CV-30052-KAR

LUSTIG GLASER & WILSON P.C

**MEMORANDUM AND SUPPORT OF LAW OF PLAINTIFF OPPOSITION TO DEFENDANTS ENCORE CAPITAL, MIDLAND FUNDING, MIDLAND MANAGEMENT , LUSTIG GLASER & WILSON P.C, KENNETH WILSON, DEREK S. ROGERS, DEAN A. HEINOLDS MOTION TO DISMISS PLAINTIFFS COMPLAINT PURSUANT TO F.R.C.P 12 (B)(6).**

The defendants counsel alleges in their Motion to dismiss plaintiff's (hereafter Ernest Allen) complaint Pursuant to FRCP 12(B) (6) that:

1. The defendants in this motion Lustig Glaser & Wilson P.C, Kenneth Wilson, Derek S. Rogers, Dean A. Heinolds (Defendants) , Encore Capital (Encore) , Midland Funding LLC (Midland) , Midland Management Inc (MCM) are hereafter Defendants and plaintiff Ernest Allen hereafter is referenced to as the plaintiff for the record.

2. Plaintiff states for the record that he points the court to PRIMARY MANDATORY AUTHORITY Exhibit 1 and 2, Consumer Financial Protection Burial consent orders against the defendants for the same violation of the law that the plaintiff has been writing in his complaints from the first day he filed his complaint.

3. Plaintiff states for the record that the plaintiff's complaint and the CFPB consent order Exhibit 2 alleges the same acts from the same defendant and attorneys in his Amended Complaint.

4. Plaintiff states that the defendants Encore, MCM & Midland cannot consent to the CFPB order and not consent to plaintiff's complaint that are based on the same allegations.

5. Defendants state that plaintiff fails to state a claim for which relief can be granted of plaintiffs Amended Verified Amended Complaint.

6. The facts are straightforward. Plaintiff recite them as alleged in Plaintiffs Amended Verified Complaint ("Complaint") and the CFPB Consent order , supplementing as necessary with information found in, public records, documents incorporated into the complaint by reference, and other matters susceptible to judicial notice Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008).

7. The Defendant first states that the plaintiff sent the defendants a MGL 93a demand letter and filed his suit the next day, and sent Encore, Midland Funding and Midland Management all a mgl 93a demand letter contrary to what their motion to dismiss states plaintiff states for the record that he has cured that defect and has Amended his verified complaint.

8. The attorney defendants also states that they have represented Portfolio against the plaintiff and has secured two default judgments, these default judgment has nothing to do with plaintiffs current complaint but will be dismissed according to the Consumer Financial Protection Burials (hereafter CFPB) Consent order against Portfolio see Exhibit 1.

9.  The Defendants Encore, Midland and MCM counsel states in their 12 B 6 motion  that

    the FCRA states  " The FCRA allows a Consumer Credit Reporting Agency (Such as

    Equifax, Experian or Trans Union ) to furnish a consumer credit report only under

    specific circumstances, including to a person which it has reason to believe..intends to

    use the information in connection with a credit transaction involving the consumer on

    whom the information is to be furnished and involving the extension of credit to, or

    review or collection of an account ... of the consumer.

10. The above statement is incorrect and defendants counsel is misleading the court below is

    exactly what the statue states:"**15 U.S.C 1681b. Permissible purposes of**

    **consumer reports...**

    (a) **In general**
    Subject to subsection (c) of this section, any **consumer reporting agency** may furnish a
    consumer report under the following circumstances and no other:

    (1) In response to the order of a court having jurisdiction to issue such an order, or a
    subpoena issued in connection with proceedings before a Federal grand jury.

    (2) In accordance with the written instructions of the consumer to whom it relates.

    (3) To a person which it has reason to believe—

    (A) intends to use the information in connection with a credit transaction involving the
    consumer on whom the information is to be furnished and involving the extension of
    credit to, or review or collection of an account of, the consumer; or

11. Plaintiff points the court to the FCRA meaning of an account which states: TITLE

    15 > CHAPTER 41 > SUBCHAPTER VI > § 1693a

12. Definitions

As used in this subchapter—

(2) the term **"account"** means a **demand deposit, savings deposit, or other asset account
(other than** an occasional or incidental credit balance in an open end credit plan as defined in

section **1602 (i)**of this title,), as described in regulations of the Board, established primarily for personal, family, or household purposes, but such term does not include an account held by a financial institution pursuant to a bona fide trust agreement; **This seems to describe credit cards and home equity loans....don't you agree?**

13. What the defendants is not telling the court is that the plaintiff has a credit card account which is an open end credit plan far too long attorneys have been misleading the court by using a statue that is meant for the Consumer Reporting Agency's not a debt collector the word debt collector is never even used in the FCRA.

14. Plaintiff points the court to Primary Authority that puts the meaning once and for all to rest please see **Bersaw v Northland Group 1:14-cv-00128-JL and CAPPETTA v. GC SERVICES LIMITED PARTNERSHIP 654 F.Supp.2d 453.**

15. These two cases sheds light on debt collectors using the FCRA statue the wrong way and leading court down a wrong path of understanding, plaintiff touches on this FCRA statue and issue further in this motion.

16. The case law that they quote is Veal v Portfolio which is on appeal currently in the 1st Circuit, plaintiff is sure that this case law will be over turned.

17. Defendant Midland, MCM has violated the Federal Debt Collection Practices Act, fair Credit reporting Act and the Massachusetts Unfair & Deceptive trade practices act by reporting the same account twice on plaintiff's credit report from Equifax see exhibit 4 Equifax consumer credit report, Midland credit management reports account # 854409XXXX for $1906. 00 owed and Midland Funding LLC also is reporting account # 854409XXXX for $1906. 00, this is a clear violation of the FDCPA, FCRA and MGL 93a.

18. Defendant Midland, MCM also reports account 854409XXXX  is owed $1015 on plaintiffs Equifax report which is a clear violation of the Federal Debt Collection

Practices Act, fair Credit reporting Act and the Massachusetts Unfair & Deceptive trade practices act see Equifax report exhibit 4.

19. Defendant Midland Funding also is reporting on plaintiffs Experian Consumer Report that plaintiffs owes $1179 as of August 2014 on the same account # 854409XXXX see Experian Consumer Report.

20. How can defendant Midland, MCM state that plaintiff owe different amount of the same account and both party's reporting the same account under a different name that is a violation of the FCRA, FDCPA and MGL 93a.

21. Plaintiff MGL 93a violation against all the defendants should stand all defendants received a mgl93a demand letter and plaintiff has amended his complaint to reflect that.

22. Defendant Midland, MCM has violated the Federal Debt Collection Practices Act, fair Credit reporting Act and the Massachusetts Unfair & Deceptive trade practices act by pulling plaintiff's consumer credit report and reporting at the same time the same account with different amount and reporting each account under both Midland and MCM which has a negative effect on plaintiff's consumer credit report.

23. Plaintiff is paying a very high interest rate on his car loan and car insurance because of defendant MCM & Midland Funding double reporting plaintiffs Amended Verified complaint reflects this which is contrary to the Federal Debt Collection Practices Act, fair Credit reporting Act and the Massachusetts Unfair & Deceptive trade practices act

24. Plaintiff states in his Amended complaint that the defendants MCM & Midland Funding has violated these laws and they state they have not please see MCM & Midland Funding 12 B 6 motion to dismiss and plaintiffs amended complaint.

25. Plaintiff states that he has send defendants Midland, MCM and Encore credit dispute letters and a MGL 93a demand letter which is contrary to what the defendants say they receive, plaintiff respectfully ask the court to dismiss defendant 12 b 6 motion and plaintiff will prove his case through discovery.

26. These default judgments where also past the statute of limitation the previous owner of the debt was a Delaware corporation and Delaware statue of limitation is 3 years the defendant Portfolio has agreed with the CFPB consent order to dismiss such default Judgements which plaintiff will pursue to have his dismissed because they were obtained falsely.

27. Also plaintiff points the court to Exhibit 2 the CFPB Consent order against the defendants Encore Capital, MCM & Midland Funding, this consent order is based upon the same allegations that the plaintiff has lodged against the defendant for see line 78 of Encore consent exhibit 2 "**False or Unsubstantiated Representations About Owing a Debt** In numerous instances, in connection with collecting or attempting to collect Debt from Consumers, Encore represented, directly or indirectly, **expressly or by implication, that Consumers owed Debts to Encore** with certain unpaid balances, interest rates, **and payment due dates**. Encore further represented to Consumers directly or indirectly, expressly or by implication, that Encore had a reasonable basis for representing that Consumers owed the claimed Debts to Encore.

28. Plaintiff informs the court that the defendant has done the same thing to him which is **False or Unsubstantiated Representations About Owing a Debt** In numerous instances, in connection with collecting or attempting to collect Debt from Consumers, Encore represented, directly or indirectly, **expressly or by implication, that Consumers**

**owed Debts to Encore** with certain unpaid balances, interest rates, **and payment due dates**.

29. Plaintiff Amended Verified Complaint also states that the defendants Filed Misleading Affidavits (See Exhibit 3) line 54. Of Encores and the CFPB Consent order states that *"Misleading Affidavits line 54. In many jurisdictions, Encore has been able to obtain a settlement or a default judgment against a Consumer using an affidavit as its only evidence. Many of these affidavits contain false or misleading testimony. 55. For example, from at least 2011 to 2014, Encore has obtained tens of thousands of judgments against* **Consumers by submitting sworn affidavits representing that the Consumer defendants did not file a timely written dispute pursuant to Section 809 of the FDCP A and stating that pursuant to the FDCP A, the Debt is therefore "assumed valid."** *56. In fact, Section 809(a)(3) of the FDCPA states that a Debt collector's Notice of Debt must inform a Consumer that Debts will be "assumed to be valid by the debt collector" (emphasis added) if they are not disputed pursuant to that section. Section 809( c) of the FDCPA expressly states that "(t]he failure of a consumer to dispute the validity of a debt [after receiving a notice under Section 809 from the collector] may not be construed by any court as an admission of liability by the consumer." 15 U.S.C. §1692g(c). 57. In thousands of cases, for which Encore possessed no account-level documentation evidencing the Consumer's responsibility for the Debt, Encore obtained a settlement or judgement based solely on an affidavit referencing the Consumer's failure to dispute the Debt.58.* **Encore has routinely submitted affidavits without attaching supporting documentation, in which the affiant swears that he or she has reviewed account-level business records concerning the Consumer's account when that is not the case. 59.**

*However, **in most instances, these representations have been made when affiants have merely reviewed a computer screen containing the scant information** produced by sellers in data files and not after a review of any account level documents such as account applications, terms and conditions of contracts, payment histories, monthly credit card statements, charge slips, or bills of sale reflecting Encore's ownership of the account. 60. **Encore has routinely requested and used affidavits from sellers that contain false or misleading statements regarding the seller's review of unattached records. For example, numerous Encore purchase agreements with credit issuers and other Debt buyers provide that "[i]n the event Seller does not provide any of the account documents on a particular account, [Encore] may request an affidavit" containing the following language: "The statements in this affidavit are based on the computerized and hard copy records of the Seller ... " (emphasis added).** 61. According to an Encore senior manager responsible for negotiating Debt purchase agreements, the ability to request affidavits from sellers that purport to be based on a review of documentation is negotiated by Encore "[a]s a safeguard, should documentation not exist, [so] we have some form of evidence from the seller." A director of Encore's Debt purchasing department has instructed Encore management to "reinforce that these affidavits are intended to provide documentation when other media is notavailable." 62. **Encore has routinely submitted business records affidavits in which affiants swear that attached documentation relates to individual Consumers' accounts.** 63. However, in many instances, the attached documentation, **which sometimes included generic credit card agreements created years after the Consumer purportedly defaulted on the agreement, does not in fact relate to the Consumer being sued.** 64. Finally, in numerous*

*instances from at least **2009 to 2011, Encore submitted affidavits in which affiants
misrepresented that they had personal knowledge of facts contained in affidavits,
including that the Consumer owed a Debt.***

10. Plaintiff points the court to Lilly haas affidavit attached as **exhibit 3,** this affidavit reflects the
same verbiage that the CFPB stated in their consent was a violation of law and that they
defendants used several times in state court and plaintiff reminds the court that his amended
complaint is based upon these same false affidavit charges as the CFPB Consent order, there is
no way plaintiff new about this lawsuit against the defendants Encore, Midland Management,
Midland Funding LLC and the attorneys

11. Plaintiff states for the record his amended complaint reflects the same complaint the CFPB
filed against the defendants exactly the same violation of the FDCPA and FCRA and other state
violations.

Plaintiff states that he has stated a claim for which relief can be granted and request the court to
grant my motion and order the defendants to answer the complaint.

12. On or about September 10, 2015 the defendant sent the plaintiff an email and stated that the
court had ordered the plaintiff to answer by August 25, 2015 plaintiff states for the record that he
has not received such an order from the court.

13, Plaintiff is under the impression that his motion for thirty days is still pending before the
court, plaintiff ask the court that if this is true to waive such an order because the plaintiff has
never received such an order and does not have access to Pacers and does not receive notices
electronically.

14. The defendants has no defense now that the consent orders where passed by their previous
client and or present client that they are representing in this lawsuit.

15. The defendants has put forth a recording of the Small Claims court plaintiff swears under penalty of perjury that the attorney that represented Lustig Glaser & Wilson in Small Claims court stated to the Magistrate at the hearing that she is waiving all attorney's fees that she had earlier asked for this was before the hearing had started, plaintiff was the last person in the court and there was conversation before the hearing got on the way.

16. Plaintiff has cured all his defects in his complaint by filing an Amended Complaint which this 12 b 6 is against, plaintiff request the court to dismiss defendants motion 12 b 6 and order all defendants Encore Capital, Midland management, Midland Funding and all the attorneys that Brian Hogencamp is representing to answer the Amended complaint.

17. **The** plaintiff also ask the court to strike the defendant motion to dismiss because plaintiff filed a Amended Verified complaint Because in this circuit, a verified complaint is "treated as the functional equivalent of an affidavit to the extent that it satisfies the standards explicated in Rule 56(e)," Sheinkopf v. Stone, 927 F.2d 1259, 1262 (1st Cir. 1991), portions of this background summary are drawn from the verified complaint.

18. The Plaintiff In this action alleged under the Fair Credit Reporting Act, 15U.S.C. § 1681 et. seq. ("FCRA"), that the defendant LGW pulled his credit on three different occasions on 06/24/14, 02/12/13 and 09/14/12 (See plaintiff complaint # 39.) and under the definition of account a credit card debt is not an account see Bersaw v Northland Group 14-cv-128-JLand Cappetta v G.C Services **654 F.Supp.2d 453**

19. Alternatively, Encore, Midland, Midland Funding and Lustig Glaser & Wilson argues, it cannot be held liable under the FCRA even if it had no lawful purpose for obtaining plaintiffs consumer report because the evidence does not show that it did so negligently or willfully.

The evidence fails to show conclusively that the debt Lustig Glaser & Wilson sought to collect

qualified as an "account" under the FCRA, and that there is sufficient evidence to establish that

Lustig was, at minimum, negligent in accessing plaintiff's consumer report.

20. Lustig, undertaking the process it routinely uses when

retained to collect a debt, contacted the credit reporting agency Experian two times (once for

each debt) and requested a consumer

21.  Plaintiff states that he has never had any business dealings with, or sought credit from, Defendants and that he had never given them permission to obtain his report. Offended by what he viewed as "an egregious violation of [his] rights, Plaintiff filed suit in the Massachusetts District Circuit Court.

22. Defendants has now moved for motion to dismiss pursuant to 12 (B)(6), Alternatively, LGW for the second time argues that the undisputed material facts show that it had a permissible purpose, and the defendants admits to pulling plaintiff credit report and that the action taken by defendants regarding pulling of plaintiffs credit reports for **DEBT COLLECTION purposes is expressly permitted** by the FCRA.

23. **Defendant state that plaintiff made his last payment on or about 03/14/17 which is not true defendant put forth a copy of a statement and plaintiff disputes that statement under this Amended Verified Opposed Opposition.**

24. The CFPB Consent order states that the defendants Encore, MCM & Midland are guilty of REAGING debts for their own benefit which plaintiff alleged before this consent was even out.

25. Either the CFPB consent is wrong and so is plaintiff's amended verified complaint or the CFPB consent is correct and so is plaintiffs amended complaint because they are based upon the same allegations.

26. Plaintiff State for the record he has not made a payment in over six years which makes the debt collection time barred under Massachusetts statue, but the original credit has a Delaware corporation which the damage was in Delaware because the corporation and contract was in Delaware which has a Three year statute of limitations defendants cannot venue shop.

27. When a Delaware court considers claims arising under a contract governed by the laws of a foreign jurisdiction, it will not automatically apply Delaware's statute of limitations to the claim.

28. Although Delaware law is clear that the statute of limitations may be shortened by contract, and may not be lengthened by contract,

### FCRA § 604 – [15 U.S.C. § 1681b]

29. Defendants state the FCRA does not apply to them and no State or Federal law had been perpetrated by LGW, MCM or Midland which is false, but fail to point the court to any case law that supports their theory.

30. For appeal purposes plaintiff points the court to PRIMARY AUTHORITY that states otherwise see FCRA Statue below.

31. Defendant Midland Funding and Midland Credit Management Inc. is currently reporting on all three of plaintiff's credit report see exhibit 4 plaintiff's consumer credit report.

32. The FCRA states In general. Subject to subsection (c), any **consumer reporting agency** may furnish a consumer report under the **following circumstances and no other**:

> (1). In response to the order of a court having jurisdiction to issue such an order, or a subpoena issued in connection with proceedings before a Federal grand jury.
> (2). In accordance with the written instructions of the consumer to whom it relates.
> (3). To a person which **it** has reason to believe

(A) intends to use the information in connection with a credit transaction  involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of **an** account of the consumer, or

33. 15 U.S.C. § 1681b (a)(3)(A) pertains to the "Credit Reporting Agency" and not to the collector or furnisher of information. The language quite clearly outlines the responsibility of the CRA to determine that they are furnishing a credit report to an entity or individual who the CRA has "reason to believe" has a legitimate purpose. This is established by one of the smallest and seemingly insignificant words in the English language. The word IT in number (3) indicates reference to the entity identified in (a), the **consumer reporting agency** and only to that entity.

34. Obviously the Defendant collector cannot rely on a section of the statute that clearly does not apply to them.

35. The FCRA, which "regulates access to individuals' 'consumer reports' (commonly known as credit reports)," provides that "[a]n entity may gain access to an individual's consumer report only with the written consent of the individual, unless the consumer report is to be used for certain 'permissible purposes,' in which case written consent is not required." Dixon v. Shamrock Fin. Corp., 522 F.3d 76, 77-78 (1st Cir. 2008) (quoting 15 U.S.C. § 1681b); see also 15 U.S.C. § 1681b(f) ("A person shall not us or obtain a

consumer report for any purpose unless . . . the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section[.]").

36. Plaintiffs FCRA claim relies upon the proposition that Defendants had neither his written consent nor any "permissible purpose" recognized by the FCRA when it obtained his consumer report on three occasions.

37. Defendants disagrees, arguing that the FCRA **expressly permits an entity to obtain a consumer report when collecting a debt from the consumer**, which, the undisputed evidence shows, was its purpose in obtaining Plaintiffs consumer credit reports on three occasions. As a result Defendants says, it is entitled to dismissal. Defendants is only partially correct about the law, and is incorrect about its entitlement to pull plaintiffs consumer credit reports for debt collection purposes **expressly permitted** by the FCRA.

38. As defendants points out, the FCRA permits an entity to obtain a consumer report when it "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit , or review or collection of **an account** of, the consumer[.]"

15 U.S.C. 1681§1681b (a) (3) (A) (emphasis added).

39. So, as another court in this circuit has noted, "[i]t is well established that a debt collection agency has the right to obtain a credit report [under this provision] so long as it is done in connection with efforts **to review or collect an account**." Searle v. Convergent Outsourcing, Inc., No. 13-cv-11914, 2014 WL 4471522, *3 (D. Mass. June 12, 2014) (citing cases. Significant to this case, however, is that the FCRA does not permit the retrieval of a consumer report in connection **with the collection of any debt**, as defendants suggests (**Bersaw v Northland Group 1:14-cv-00128-JL**.)

40. Rather, as both Searle and the text of § 1681b (a) (3) (A) indicate, that is permitted only when the report is to be used in connection with the collection of an **"account."** The plaintiff points the court to the FCRA regarding the specific, narrow definition of the meaning and term "account" from the FCRA (See Plaintiffs Verified Complaint line 45), (also See **Bersaw v Northland Group 1:14-cv-00128-JL**.) which encompasses only a *demand deposit, savings deposit, or other asset account (other than an occasional or incidental credit  balance in an open end credit plan as defined in [15 U.S.C. § 1602(j)]), as described in regulations of the  Bureau [of Consumer Financial Protection], established primarily for personal, family, or household purposes.15 U.S.C. § 1693a(2); see id. § 1681a(r) (4) (incorporating definition of "account" set forth in Electronic Funds Transfer Act).*

41. It is not sufficient that Defendants sought plaintiffs credit report for debt collection purposes, nowhere in the FCRA does it state a permissible purpose to pull a consumer credit report in connection with the collection of a debt. The evidence must also show that the debt in question satisfied the definition of "**account.**" Which it clearly does not.

42. **Defendant's fatal mistake is that they believe that a credit card is under the definition of account in the FCRA but it is not.**

43. Under the FCRA in 15 U.S.C. §1681a(r) (4) states: The terms "account" and "electronic fund transfer" have the same meanings as in section 1693a of this title.

    *(2) the term "account" means a demand deposit, savings deposit, or other asset account (other than an occasional or incidental credit balance in an open end credit plan as defined in section 103(i) of this Act), as described in regulations of the Board, established primarily for personal, family, or household purposes, but such term does*

*not include an account held by a financial institution pursuant to a bona fide trust*
*agreement;*

*The definition of "account" clearly does not include an account such as a credit card*
*open end credit account but does include a demand deposit account, savings deposit or*
*other asset account which is wholly different.*

20. The Plaintiff never had any such account so there was obviously no permissible purpose for
the credit pull.

44. FCRA 15 U.S.C 1681a(r) (4) meaning of account is not a credit card which according to
the definition of account in the FCRA a credit card is an *occasional or incidental credit*
*balance in an open end credit plan as defined in section 103(i) and that the defendants*
*rely on and states that " The alleged actions taken by MCM, MIDLAND & LGW*
*regarding pulling plaintiffs credit reports for debt collection purposes is expressly*
*permitted by the FCRA but fails to point the court to the actual verbiage in the FCRA*
*that state that .*

45. The defendant *MCM, MIDLAND &* LGW also admitted in their Motion to dismiss that
"LGW admits that it requested plaintiffs credit report while it was attempting to collect
debts from the plaintiff the evidence fails to show conclusively that the debt LGW *sought*
*to collect from plaintiff did not qualified* as an **"account" under the FCRA**, and that
there is  sufficient evidence to establish that LGW was,

Negligent in accessing Plaintiffs consumer report.

46. The defendant would like the court to believe that the definition of account is an
occasional or incidental credit balance in an open end credit plan as
defined in section 103(i) of the FCRA, the court must remember that The definition of

"account" clearly does not include an account such as a credit card which is an open end credit account but does include a demand deposit account, savings deposit or other asset account which is wholly different. The Plaintiff never had any such account so there were obviously no permissible purpose for the credit pull, defendant LGW was trying to collect an open end credit plan which is a credit card according to the FCRA (See plaintiffs Verified Complaint line 45 and 46).

47. The evidence does show and there is, in fact, evidence that sheds light on the nature of the debts defendants was attempting to collect from plaintiff (See defendant Exhibit's to their motion to dismiss). The defendants in their motion to dismiss points the courts to several exhibits that they sent plaintiff stating that the debt was in fact a credit card which is not under the meaning of account in the FCRA which makes there permissible purpose moot.

48. But, based upon the information presently before the court, that the debts in question were not such accounts, plaintiff perhaps realizing this shortcoming, asserts in its reply memorandum that it "was engaged in the collection of three credit card accounts in Plaintiff's name," and cites no ample case law for the proposition that the term "account" encompasses credit card accounts, Even if the court were to follow the lead of those courts and assume that credit card accounts fall within the FCRA's definition of "account,"

49. Yet even if the court were to further indulge defendants claim that it was seeking to collect credit card debts from plaintiff, defendants has not claimed—let alone presented evidence establishing—that those debts were "established primarily for personal, family,

or household purposes" (as opposed to, say, business purposes), as required for them to qualify as "accounts" under 15 U.S.C. § 1693a(2).

50. On the current record, there is a genuine issue of material fact as to whether defendants had a "permissible purpose" for obtaining plaintiffs consumer reports.

51. The evidence before the court is that, in Midland Funding purchased a credit card account from chase. Palisades

52. There is no evidence showing that defendants took any steps to verify whether the debts qualified as "accounts" within the meaning of the FCRA before going about its "routine process" and obtaining plaintiff's credit report.

53. On this record, a reasonable finder of fact could conclude that defendant was either ignorant of, or simply ignored, the possibility that the debts Midland retained it to collect from plaintiff were not "accounts" within the meaning of the FCRA. This is, at a minimum, negligence, although it may well rise to the level of willfulness, too: as the Supreme Court has held, "reckless disregard of a requirement of FCRA [will] qualify as a willful violation," Safeco Ins. Co. of Amer. v. Burr, 551 U.S. 47, 71 (2007) (Souter, J.), and a finder of fact could readily conclude that defendants recklessly disregarded the FCRA's requirement that it have a "permissible purpose" for requesting Plaintiffs report.

54. Plaintiff quite astutely pointed out that the definition of  "account" (See plaintiffs Verified Complaint) set forth in 15 U.S.C. § 1693a(2) specifically excludes "an occasional or incidental credit balance in an open end credit plan as defined in [15 U.S.C. § 1602(j)]." As credit card accounts are generally considered to be open end credit plans, see, e.g., Barrer v. Chase Bank USA, N.A., 566 F.3d 883, 887(9th Cir. 2009); Benion v.

Bank One, Dayton, N.A., 144 F.3d 1056, 1057 (7th Cir. 1998), there may be reason to doubt the view expressed in Harris and like cases.

55. For these reason plaintiff ask the court to reject dismiss and strike defendant Encore, Midland, Midland Funding, Lustig and all attorneys that Brian Hogencamp represents in this Motion to dismiss in its entirety.

56. Plaintiff would like to inform the court that all the defendants violated the Federal Debt Collection Practices Act by trying to collect a time barred debt and the Character of the amount of the debt.

57. Plaintiff respectfully state for the record that the amount defendants were trying to collect is the wrong amount and plans to propound discovery to prove his case.

58. Plaintiff would like to bring the courts attention that the Defendants filed a complaint to collect a debt from the plaintiff in Springfield state court for approximately $3000 and that there exhibits show that they filed a complaint for $1906.48 (See defendant Small claims form) in that case plaintiff pointed out the defects in the amount defendants were trying to collect and the magistrate judge at the trial found the plaintiff not guilty.

59. The Springfield court dismissed their lawsuit in Midland Funding Verses Ernest Allen Docket # 1423SC2930.

60. At the trial plaintiff pointed the court to the amount and the defendants immediately waived all the fees to bring the actual amount down to approximately $1989.00 but the court refused to let the defendants because they had already testified concerning the amount.

61. All the defendants that participated in the collection of the debt by signing their names to correspondence to the plaintiff violated the Federal Debt Collection Practices Act by

trying to collect a different amount which is contrary to the MDCRA, MGL 93 and the
FDCPA.

62. Plaintiff ask the court to take his Amended Verified Complaint as an affidavit as this
opposition to defendants motion to dismiss on this 4th day of June.

## STANDARD OF REVIEW

The standard to be applied when deciding a motion to dismiss under Rule 12(b)(6), Fed. R. Civ.
P., has often been repeated. It is incumbent upon the court to "accept the complaint's allegations
as true, indulging all reasonable inferences in favor of [the plaintiff]." Kiely v. Raytheon Co.,
105 F.3d 734, 735 (1 Cir., 1997); Hogan v. Eastern Enterprises/Boston Gas, 165 F. Supp. 2d 55,
57 (D. Mass., 2001). Indeed, more than forty years ago the Supreme Court declared that "a
complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that
the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."
Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Pursuant to Fed. R. Civ. P. 10(c), "[a] copy of any
written instrument which is an exhibit to a pleading is a part thereof for all purposes." Similarly,
when "a complaint's factual allegations are expressly linked to – and admittedly dependent upon
– a document (the authenticity of which is not challenged), that document effectively merges into
the pleadings and the trial court can review it in deciding a motion to dismiss under Rule
12(b)(6)." Beddall v. State St. Bank and Trust Co., 137 F.3d 12, 17 (1 Cir., 1998); see also
Blackstone Realty LLC v. Federal Deposit Insurance Corporation, 244 F.3d 193, 195 n.1 (1 Cir.,
2001).

Wherefore,

Plaintiff respectfully request the court to dismiss defendants Motion to dismiss because plaintiff has cured all defects in his amended complaint and to deny defendants motion to dismiss.

September 11, 2015

Ernest Allen

53 Tilton Street

Springfield, Ma 01109-2331

ernestallen1@comcast.net


Brian Hogencamp

Lustig Glaser & Wilson P.C

PO BOX 549287

Waltham, Ma 02454

781-514-1524

Bhogencamp@lgw.com

Kara Thorvaldsen

260 Franklin Street

Boston, Ma 02110

617-422-5300

kara.thorvaldsen@wilsonelser.com